DANIEL B. HINCKLEY *& al. versus* CHARLES D. GILMORE.

The provisions of the statutes authorizing, in certain cases, an officer to sell, on mesne process, personal property attached, do not apply where logs are seized on a writ brought to secure the statute lien thereon, in favor of one who has rendered services in cutting and hauling them, if the owner of the logs is not a party defendant in the writ; and such proceeding and sale afford no justification to the officer in a suit against him, for their value, by the owner of the logs.

REPORTED from *Nisi Prius,* by APPLETON, J.

TROVER for 397 logs. The plaintiffs had title to the township from which the logs were cut, by mortgage from Rufus Dwinel. The plaintiffs permitted Dwinel to cut logs, they retaining a lien on them. The logs in controversy were cut under a contract made by Hewes & Eastman with Dwinel.

On August 9th, 1860, the defendant, as sheriff of the county of Penobscot, sold the logs to Samuel Pratt, they being then in the possession of the defendant, he having before that time seized them.

In defence, were introduced six writs against said logs and Hewes & Eastman, brought by persons for their claims for services in cutting and hauling the logs, each claiming a lien on the logs under the provisions of the statute. On these writs, the defendant seized and held the logs, until they were sold by him.

These writs were returnable to and entered at the October term, A. D. 1860, for the county of Waldo, when the Court ordered notice, as provided by statute, to be given to said Dwinel and the plaintiffs, as owners of the logs. The notice was given, and, at the term of Court in January, 1861, a default as to the logs was entered, and also against the said Hewes & Eastman; but judgment in none of the cases had been entered up and rendered.

This case was argued by

*J. A. Peters*, for the plaintiffs, and by

*C. P. Stetson*, for the defendant.

The opinion of the Court was drawn up by

KENT, J.—This is an action against a sheriff for taking certain logs, which the plaintiffs claim as their property. The defendant undertakes to justify the taking, by showing that he attached these logs by direction of a writ, in which he was specially directed to attach them. The plaintiffs do not, in this action, deny that this would be a justification to the defendant, so far as the attaching and holding the logs is in question; but they say that he has so conducted since the attachment, that he is to be charged as a trespasser *ab initio*. They say that, instead of holding them until final judgment, he has unlawfully sold them to one Samuel Pratt. The fact of such sale is admitted, and the officer attempts to sustain the legality of his acts, on the ground that he was

authorized to sell them under the statute, he having complied with all the essential requirements.

The plaintiffs reply to this defence, that, admitting all the facts stated in the defendant's return, he had no right to sell these logs at the time he did. This raises the question whether an officer can proceed to sell logs attached as these were, on a writ in favor of a plaintiff who claimed a lien thereon for labor done on them—the suit being against a third party, not the owner, who had not been summoned in, and these logs being attached by a special mandate in the writ, the case being still pending?

There is no question, since the decision of the case of *Redington* v. *Frye*, 43 Maine, that the writ and declaration referred to are sufficient in form to authorize the attachment, nor that the proceedings are duplex in their character. The suit, as against the contractors, who are named as the debtors, is the ordinary action of assumpsit for work and labor; as against the logs it is not originally against any persons; but is in the nature of a proceeding *in rem*, to enforce a lien. Any property of the debtors named, not exempt from attachment, might be attached and held as in common cases, or sold on the writ. But the logs are not attached as the property of the debtors. They are attached under the provisions of c. 91, § 19, to enforce a lien claimed for labor. In ordinary cases, no questions can be tried in the suit, on which an attachment is made, to test the ownership or rights of any parties in the goods attached. But the only question as to these logs, which can be tried in a case like this under consideration, is, not whether the defendants named owe the debt sued for, but whether the goods seized are liable to be held to pay that debt, by reason of a lien. The attachment of the logs, therefore, resembles very nearly a process in Admiralty, where the article is seized and held in the custody of the law until a decision is had as to the title or right in the thing itself. There is no doubt that in Admiralty a sale of the thing may be made *pendente lite*, but it must be by special order of the Court, and for special

reasons. The marshal cannot sell it without such order, however clearly it may appear that such sale was best for the interests of all parties.

Did our Legislature intend, when they gave the new right to enforce a lien by attachment, to place such seizure on the same ground, in every respect, as an ordinary attachment of the debtor's property, before the claimants had been summoned in? In ordinary cases, the sale on a writ, as it is termed, simply changes the security from specific articles into money, and the money, to all intents, stands in the place of the goods. But it would be far in · advance of this to authorize a sale of an article, confessedly not the debtor's, and which could not be levied on until after notice to the claimant, and a judgment of the Court that it was subject to the lien claimed. Until such judgment the attaching creditor acquires no right to intermeddle with the property, except to have it taken into the custody of the law to await a trial and decision *in rem*, as to the lien; and the owners cannot take it by replevin, as in other cases, it being in the custody of the law as legally attached. There are inseparable difficulties in applying the provisions of the statute authorizing a sale· on a writ, to a case like this. The section (47 of c. · 81) which gives the right to commence proceedings preliminary to a sale, contemplates that there has been a prior refusal by one of the parties to have the goods sold by mutual consent. The statute did not intend to give the right to the creditor to subject the debtor and his goods to the expense of an appraisement and notices, &c., until he had refused an application to have the property sold as by consent of all parties, under § 46. It would be manifestly unjust to incur these expenses until such refusal on the part of the debtor. But, in the case under consideration, there was no debtor representing these logs, to give assent or refusal. It is contended, in the ingenious argument of the counsel for the defence, that the logs may be considered "the party." The difficulty of this view, in reference to the various provisions of the sections of c. 81, authorizing a sale on a writ, is,

that those sections contemplate a party who can, and will, determine and act from intelligence and according to a formed judgment, and not a mere " King Log." The owners of the logs are not properly parties or defendants until they have been summoned into Court, to assert there their rights, if they see fit. In this case, the action had not been entered in Court, when the appraisement and sale were made. The property attached was not the defendants in the suit, and therefore they could not assent to or refuse a proposition to sell by consent. The logs were dumb. A question may be asked, to test whether these provisions apply to a case like this, viz. :— Could the debtors sued consent to a sale under § 46, and, by that consent justify the officer in selling another man's logs ?

Another difficulty is in § 49. "The debtor" has the right to appoint one of the appraisers. The owners of the logs are not "debtors," and, we have seen, were not then parties. It could not have been the intention to give this right to choose an appraiser to the "debtors" named in the writ, who were not owners, and who had no interest in the goods. After the appraisement "the debtor" may take the property, by giving a bond to pay the appraised value, or to satisfy all judgments that may be recovered in the suits on which it is attached. If this right should be claimed by the debtors in such a case as this, the property must be delivered to them, and they would only be held to pay their own debt, and the owners of the logs must look to them only, if on a final decision it should be adjudged that no lien existed. The owners of the logs are not "debtors," and, in this case, were not parties at the time, and had no opportunity to give the bond. The condition required in the bond is not one applicable to a case of lien. It is, that the obligor shall pay the appraised value of the property, or satisfy all judgments in the suits in which the property is attached. The appraised value may be more than the lien claims, or the judgments may be more than the appraised value. The proper condition would seem to be, to pay all liens on the

goods. There might be a conflict if the "debtors" should insist upon giving the bond when the owners also claimed the right to give it. To which party should the goods be delivered? It is evident, from a comparison of the statutes, that the provisions in relation to a sale on a writ, were made without reference to the peculiar attachment to enforce a lien. Indeed the original statutes in reference to a sale before judgment, was passed many years before the one giving a right to enforce a lien by attachment, and the R. S. of 1857 make no change in the provisions. The framers of the original statutes could not have had in view an attachment to preserve a lien, as no such right then existed. This fact is an answer to the argument drawn from the language of the 48th section of c. 81, which requires the officer, in his posted notice, to name "the supposed owner of the property." That language was first used in the statute of 1846, c. 198. The first statute giving a lien to laborers on logs and lumber, and a right to attach, to enforce it, was passed in 1848. (c. 72.) It is, however, true that those words may be sufficient to show that the provision as to posting notices may be adapted to a case of owners not the debtors sued. The provision was, undoubtedly, designed originally to meet the case where there were several defendants, and the property of one, or a part only of them, was attached. But there are insuperable difficulties in other parts of the proceedings.

The officer must be held as a trespasser *ab initio*, according to the case of *Ross* v. *Philbrick*, 39 Maine, 29.

*Defendant defaulted — Damages to be assessed*
*by the Judge, at Nisi Prius, as agreed.*

TENNEY, C. J., RICE, APPLETON, CUTTING and MAY, JJ., concurred.